# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

FILED

October 17, 2013

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0619

ANTHONY J. VELTRI,
Respondent Below, Petitioner

V.

DIANE PARKER, IN HER CAPACITY AS
CHAIR OF THE DEMOCRATIC EXECUTIVE
COMMITTEE OF TAYLOR COUNTY, WEST VIRGINIA,
AND JOHN MICHAEL WITHERS,
Petitioners Below, Respondents

Appeal from the Circuit Court of Taylor County
Honorable Larry V. Starcher, Special Judge
Civil Action No. 11-C-21

## REVERSED AND REMANDED

Submitted: September 25, 2013
Filed: October 17, 2013

James M. Wilson
Charles F. Johns
Devin C. Daines
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Attorneys for the Petitioner

Vincent Trivelli
The Law Office of Vincent
Trivelli, PLLC
Morgantown, West Virginia
Attorney for the Respondents

The Opinion of the Court was delivered PER CURIAM.

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."

Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "The standard of appellate review of a circuit court's order granting

relief through the extraordinary writ of mandamus is *de novo*."  Syllabus point 1, *Staten v.*

*Dean*, 195 W. Va. 57, 464 S.E.2d 576 (1995).

3.      """The standard of review applicable to an appeal from a motion to alter

or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that

would apply to the underlying judgment upon which the motion is based and from which the

appeal to this Court is filed." Syllabus point 1, *Wickland v. American Travellers Life*

*Insurance Co.,* 204 W. Va. 430, 513 S.E.2d 657 (1998).'  Syllabus point 2, *Bowers v.*

*Wurzburg,* 205 W. Va. 450, 519 S.E.2d 148 (1999)."  Syllabus point 1, *Alden v. Harpers*

*Ferry Police Civil Service Commission*, 209 W. Va. 83, 543 S.E.2d 364 (2001).

4.      "A writ of mandamus will not issue unless three elements coexist – (1)

a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of

respondent to do the thing which the petitioner seeks to compel; and (3) the absence of

another adequate remedy."  Syllabus point 2,  *State ex rel. Kucera v. City of Wheeling*, 153

W. Va. 538, 170 S.E.2d 367 (1969).

5.      "The right to Mandamus, though a remedy broad in scope and expanded and enlarged in jurisdiction, must exist when the proceeding is instituted."  Syllabus point 9, *State ex rel. Booth v. Board of Ballot Commissioners of Mingo County,* 156 W. Va. 657, 196 S.E.2d 299 (1973).

6.      "In that Mandamus was never intended to determine a right, but only to enforce a right, evidence cannot be taken and proof cannot be made in this Court or in a circuit court which would permit, in the first instance, the trial of an election contest by the use of the writ of Mandamus."  Syllabus point 3, *State ex rel. Booth v. Board of Ballot Commissioners of Mingo County,* 156 W. Va. 657, 196 S.E.2d 299 (1973).

7.      "A certificate of election is conclusive to the result of the election until set aside or vacated in some manner authorized by law on direct attack and is not subject to collateral attack by Mandamus."  Syllabus point 11, *State ex rel. Booth v. Board of Ballot Commissioners of Mingo County,* 156 W. Va. 657, 196 S.E.2d 299 (1973).

**Per Curiam:**

The petitioner herein and respondent below, Anthony J. Veltri ("Commissioner Veltri"), appeals from the Circuit Court of Taylor County's March 16, 2012, summary judgment order, in which the court also granted a writ of mandamus. The effect of the mandamus was to remove Commissioner Veltri from his post as Taylor County Commissioner[1] and to replace him with the respondent herein and petitioner below, John Michael Withers ("Mr. Withers"). On appeal to this Court, Commissioner Veltri assigns several errors, with the focus of the alleged improprieties being that the circuit court erred in its finding that Commissioner Veltri "was not *Constitutionally* qualified to run for the office of Taylor County Commissioner from the Tygart Magisterial District in either the 2010 primary or general elections." After a careful review of the parties' briefs, the appendix record, the pertinent legal authority, and listening to the parties' oral arguments, we reverse the circuit court's order and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This legal dispute presents a post-election mandamus action filed by Mr. Withers and his political party leader, Diane Parker. The action seeks the removal of

---

[1]On July 13, 2012, the circuit court's order granting the writ of mandamus was stayed.

Commissioner Veltri, having already been elected and sworn into office. Mr. Withers claims that Commissioner Veltri lives in the Western Magisterial District and is, therefore, constitutionally and statutorily ineligible to hold office for a position from the Tygart Magisterial District. Moreover, Mr. Withers urges that he is entitled to fill the vacancy created with the removal of Commissioner Veltri. The main question in this case, *i.e.*, Commissioner Veltri's residency, is impacted by redistricting actions in the 1980s.

Since 1944, Commissioner Veltri has resided in the same house located in Grafton, West Virginia. As early as the late 1960s, Commissioner Veltri ran for various public offices, including his first campaign for County Commissioner in 1992. Prior to each election, Commissioner Veltri would file candidacy papers in which his district was verified by county officials. Each time that Commissioner Veltri ran for elected office, he was designated as a representative of Precinct 6 of Tygart District.

The relevant portion of Precinct 6 of Tygart District was subject to four redistricting actions from December 1983 to December 1984.[2] The first, adopted by the Commission in December 1983, moved a portion of Precinct 6 of Tygart District to Precinct 7 of Western District, which included Commissioner Veltri's physical location. Next, in April 1984, the commission reversed the 1983 action, finding that it "created an illegal

_____

[2]Commissioner Veltri was not a member of the County Commission during the redistricting events and did not serve as a commissioner until the 1992 election.

precinct." The impact of the April 1984 adoption was that Commissioner Veltri's residence was returned to Precinct 6 of Tygart District. Little more than a week later, still in April 1984, the commission decided that the earlier action in April "had created a serious problem." The commission withdrew the early April action. Thus, this third action effectively reinstated the first action from 1983, which relocated Commissioner Veltri's residence as being part of Precinct 7 of Western District. Finally, in December 1984, the commission unanimously voted to "transfer voters moved from Precinct 6 to Precinct 7 back to their original Precinct [so that] Precinct 6 will remain in Tygart District." Therefore, Commissioner Veltri's home location was restored as being a part of the Tygart District. In summary, Commissioner Veltri has lived at the same physical address since 1944. The location of his home consistently has been within Precinct 6 of Tygart District except for a short period of time in late 1983 and 1984 when redistricting plans placed the home within the Western District.

Pertinent to the currently-pending action before this Court is the 2010 election for Taylor County Commissioner. Mr. Withers was the Democratic candidate for the commission from the Tygart District. The incumbent, Commissioner Veltri, the Republican candidate from the Tygart District, had been serving as County Commissioner since 1992. Commissioner Veltri won the 2010 election, and was sworn into office on December 28, 2010. Subsequent thereto, on March 16, 2011, Mr. Withers filed a petition for writ of mandamus in the Circuit Court of Taylor County. In the petition for writ of mandamus, Mr.

Withers asserted that Commissioner Veltri did not live in the Tygart Magisterial District and, accordingly, was not eligible for election therefrom.

Discovery ensued, and Commissioner Veltri testified that, prior to his decision to campaign for county commission for the 2010 election, he consulted voter registration records. This search led to his determination that both he and Mr. Withers lived in Precinct 6, the Tygart District. Commissioner Veltri submitted an affidavit explaining that he had run for public office "several times" since the 1960s, and that on each occasion of his running for office, the Taylor County Clerk verified that he was a resident of Precinct 6.

The circuit court entered a March 16, 2012, order granting summary judgment to Mr. Withers, within which the lower court issued a writ of mandamus, removing Commissioner Veltri from his post and seating Mr. Withers in his stead as County Commissioner. The lower court stated as follows:

> 16. No evidence was provided to the court to demonstrate that the procedures used by the Taylor County Commission in the series of Magistrate District redistricting and voting precinct changes actions between February 1984 and December 1984 complied with the statutory mandates relating to publishing and providing for open public hearings for proposed changes in the magisterial districts.[3]

---

[3]The circuit court's order also notes that the current Clerk of Taylor County admitted that "to the extent that said matters are consistent with the records maintained in the

(continued...)

4

17. Based on the records of the Taylor County Commission the residence of respondent Anthony J. (Tony) Veltri was at the in the (sic) year of 2010, and is currently located in the Western Magisterial District of Taylor County.

(Footnote added).

In reaching its conclusions, the circuit court determined that Commissioner Veltri was not qualified to run as a candidate of the Tygart District because he resided in the Western District. Thus, the lower court found that Mr. Withers, as a proper resident of Tygart District and as the second place vote recipient in the election, was the proper person to be certified as county commissioner. In conclusion, the circuit court's March 16, 2012, order stated:

3. The actions of the Taylor County Commission taken in 1983 to change the boundaries of the Taylor County magisterial districts were taken in compliance with the law of the State of West Virginia. That is, the changes were legally advertised providing notice to the public, a public hearing was

[3](...continued)
Office of the Clerk of the County Commission of Taylor County" the December 1983 changes moved the Veltri's (sic) residence into the Western District, that General Elections were held in June and November of 1984 in accordance with the boundaries set by the December 1983 action, and that the voters of Taylor County were not given notice of the December 1984 actions of the Taylor County Commission.

In essence, the lower court used this evidence to find that the 1983 action, moving Commissioner Veltri to the Western District, was valid. Furthermore, it found that the subsequent actions in 1984 were not properly handled and, therefore, were void.

held, and the Taylor County Commission adopted the changes unanimously in open meetings.

4. The Taylor County Commission actions of 1984 that attempted to reverse the 1983 actions action [sic] were not in compliance with the statutory law, and, therefore, had non [sic] legal effect. The Commission minutes of April 17, 1984 indicate that a vote taken on the changes was to be posted on the Court House door. However, on April 25, 1984—well before the passage of the required thirty days—the Taylor County Commission unanimously voted to withdraw the action of April 17, 1984, thereby leaving the December 1983 changes in place.

5. The minutes of the Taylor County Commission regarding the second attempt by the Commission in December 17, 1984 to "reverse" the December 1983 changes as they concern the area containing the residence of Anthony J. Veltri reflect that the Commission merely voted on a motion. The minutes indicate no effort to notify the public of the actions, no legal advertisement of any kind, no placement of information about the action on the Court House door; and neither respondent produced any evidence—documents, minutes, or otherwise—that demonstrate that the statutory required notice, advertisements and postings were in fact taken.

6. No evidence was provided to the court to demonstrate that the procedures used by the Taylor County Commission in a series of magistrate district redistricting and voting precinct changes actions that were attempted to be made between February 1984 and December 1984 complied with the statutory mandates relating to publishing and providing for open public hearings for proposed changes in the magisterial districts and voting precincts.

Thereafter, on March 28, 2012, Commissioner Veltri filed a motion to alter or amend judgment and provided updated evidence, which he urged the lower court to find supported his assertion that his residence has been, and continues to be, located in Precinct

6 of Tygart District. The new evidence explained that the Taylor County Commission approved a plan on December 6, 2011, and that, as a result of the approval, it is clear that Commissioner Veltri's residence is in the Tygart District. The circuit court denied that motion by order entered April 16, 2012.[4] This appeal followed.

## II.

## STANDARD OF REVIEW

As previously explained, the orders appealed to this Court are a March 16, 2012, order, which granted summary judgment to Mr. Withers and issued a writ of mandamus therein, and an April 16, 2012, denial by the lower court of Commissioner Veltri's motion to alter or amend judgment pursuant to West Virginia Rule of Civil Procedure 59(e).

In this regard, it has long been held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Likewise, "[t]he standard of appellate review of a circuit court's order granting relief

---

[4]Subsequent to the order granting summary judgment, but prior to the order denying the motion to alter or amend the judgment, on March 20, 2012, the lower court granted Commissioner Veltri's motion for a stay of the proceedings to allow him time to appeal. The lower court granted the stay and found that Commissioner Veltri could transact business as the County Commissioner during the pendency of the stay, so long as he did not participate in any matters relating to redistricting of magisterial boundaries. On July 13, 2012, this Court issued its own stay of the circuit court's issuance of the writ of mandamus.

through the extraordinary writ of mandamus is *de novo*." Syl. pt. 1, *Staten v. Dean*, 195

W. Va. 57, 464 S.E.2d 576 (1995). Additionally,

> "'[t]he standard of review applicable to an appeal from
> a motion to alter or amend a judgment, made pursuant to W. Va.
> R. Civ. P. 59(e), is the same standard that would apply to the
> underlying judgment upon which the motion is based and from
> which the appeal to this Court is filed.' Syllabus point 1,
> *Wickland v. American Travellers Life Insurance Co.,* 204
> W. Va. 430, 513 S.E.2d 657 (1998)." Syllabus point 2, *Bowers
> v. Wurzburg,* 205 W. Va. 450, 519 S.E.2d 148 (1999).

Syl. pt. 1, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364

(2001). Thus, we will apply a *de novo* standard of review. Mindful of this applicable

standard, we now examine the individual issues presented in this appeal.

### III.

### DISCUSSION

On appeal to this Court, Commissioner Veltri sets forth several assignments

of alleged error committed by the circuit court: (1) inappropriate issuance of mandamus to

challenge a post-election procedure to determine a sworn official's qualifications; (2)

improper reliance on *Burkhart v. Sine*, 200 W. Va. 328, 489 S.E.2d 485 (1997); (3) erroneous

burden shifting to Commissioner Veltri to show that redistricting actions were procedurally

proper, which contravenes the presumption that public officials' actions are valid unless

proven otherwise by clear and convincing evidence by the challenging party; (4) unlawful

conclusion that laches did not apply due to the circuit court's determination that Mr. Withers

8

"vigorously pursued [his] rights . . . as expeditiously as [he] could[;]" (5) failure to award attorney's fees and costs to Commissioner Veltri; and (6) refusal to consider newly-offered redistricting evidence regarding Commissioner Veltri's residency. We need not address each alleged error because we determine that the lower court's issuance of a writ of mandamus was improper.

In support of his position, Commissioner Veltri argues that Mr. Withers had no clear right to relief at the time the action was filed. Further, Commissioner Veltri asserts that West Virginia law expressly prohibits the post-election use of mandamus to challenge electoral qualifications. In response, Mr. Withers disagrees and contends that mandamus is not prohibited in post-election situations. The current case, as asserted by Mr. Withers, is a means of compelling the county commissioner to adhere to the laws regarding residency requirements.

It is well-settled that

[a] writ of mandamus will not issue unless three elements coexist – (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969). Importantly, "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and such right cannot be established in the proceeding itself." Syl. pt. 1, *Kucera*, *id.*

9

Moreover, "[t]he right to Mandamus, though a remedy broad in scope and expanded and enlarged in jurisdiction, must exist when the proceeding is instituted." Syl. pt. 9, *State ex rel. Booth v. Board of Ballot Comm'rs of Mingo Cnty.,* 156 W. Va. 657, 196 S.E.2d 299 (1973). *Booth* further explained

> [i]n that Mandamus was never intended to determine a right, but only to enforce a right, evidence cannot be taken and proof cannot be made in this Court or in a circuit court which would permit, in the first instance, the trial of an election contest by the use of the writ of Mandamus.

Syl. pt. 3, *id.*

Here, Mr. Withers sought to develop facts to disqualify Commissioner Veltri through discovery after he had filed his petition for a writ of mandamus. Evidence was taken, including depositions, document discovery, and two rounds of summary judgment briefing. Mr. Withers used this evidence to create his case, which shows that the right clearly did not exist at the time the action was filed. Rather, Mr. Withers sought to use the mandamus proceeding, itself, to establish his case. Thus, Mr. Withers was unable to show a clear legal right to the relief sought at the time his proceeding was instituted.

Furthermore, this Court has expressly disapproved of the use of mandamus proceedings in circumstances such as those presented by the case *sub judice*. In Syllabus point 11 of *Booth*, we specifically determined that "[a] certificate of election is conclusive to the result of the election until set aside or vacated in some manner authorized by law on

10

direct attack and is not subject to collateral attack by Mandamus." 156 W. Va. 657, 196

S.E.2d 299. *See also State ex rel. Porter v. Bivens*, 151 W. Va. 665, 155 S.E.2d 827 (1967)

("Though he may challenge the eligibility and the qualification of the petitioner to hold the

office in question in the pending election contest or other proper proceeding to try the title

to the office or to remove the petitioner from it, he may not . . . do so in this mandamus

proceeding.").

To be clear, however, we acknowledge that mandamus has been recognized

as a proper legal action in the realm of **pre-election** proceedings. *See Booth,* 156 W. Va.

657, 677, 196 S.E.2d 299, 312 ("'election Mandamus' may not be employed to try title to

contested political offices, with the possible exception that we must recognize Mandamus

has been successfully used to find, **in advance of the election**, the disqualification of a

particular candidate by reason of his pre-existing ineligibility.") (emphasis added)). *Cf. State*

*ex rel. Sandy v. Johnson*, 212 W. Va. 343, 571 S.E.2d 333 (2002) (per curiam) (finding that

candidate for office has clear legal right to run for office, and when prevented from

exercising that right, mandamus is appropriate remedy). While mandamus proceedings can

be appropriate in a **pre-election** situation, a very different policy is in place when the election

occurs: "Once an election has been held, however, sound public policy dictates that newly

elected officials not be vexed by continuing lawsuits." *Marra v. Zink*, 163 W. Va. 400,

401-02, 256 S.E.2d 581, 583 (1979). Here, not only had the election occurred, but the results

had been certified and Commissioner Veltri had been sworn into office. Therefore,

11

mandamus was not a proper proceeding by which to challenge the election results, and, even if the type of proceeding had been appropriate, Mr. Withers was not entitled to issuance of mandamus because he was unable to show a clear legal right to the relief sought.

The lower court relied on the case of *Burkhart v. Sine*, 200 W. Va. 328, 489 S.E.2d 485 (1997), to support its decision to issue a writ of mandamus for the removal of Commissioner Veltri from and the installation of Mr. Withers into the office of County Commissioner. However, as our line of election cases has held, there are different procedures for pre- and post-election infirmities. As argued by Commissioner Veltri, the *Burkhart* case lends no support for the removal of a sworn commissioner and the installation of a losing candidate via post-election mandamus. The circuit court's analogies to the individuals in *Burkhart* ignore the fact that this Court stressed several times: the candidate's qualifications in *Burkhart* were challenged **pre-election**. When the challenge in the present case arose as to Commissioner Veltri, he already had been certified the winner of the election and sworn into office. Therefore, we find the lower court's reliance on *Burkhart* to be misguided.

Adding further support to the determination that the lower court erred in issuing a writ of mandamus, we highlight that the third required element for issuance of a writ of mandamus also is missing: the absence of another adequate remedy. Post-election remedies exist in W. Va. Code §§ 3-7-6 (2002) (Repl. Vol. 2011) and 3-7-7 (1963) (Repl.

12

Vol. 2011), which sets forth the process for contesting a pending election, as well as W. Va. Code § 6-6-7 (1985) (Repl. Vol. 2010), allowing for a removal proceeding. The circuit court improperly reasoned that a removal proceeding was not available in the present case because there were no claims of misconduct or malfeasance; however, the statute provides that a removal proceeding is available for any cause or ground provided in any statute. *See Bevins v. Blackburn*, 142 W. Va. 564, 97 S.E.2d 46 (1957) (a removal action turning on residency). *Accord* Syl. pt. 6, in part, *Booth*, 156 W. Va. 657, 196 S.E.2d 299 ("Neither a political party executive committee nor its 'colorable' candidate has a clear legal right to require a decision by this Court in Mandamus of factual matters . . . involving factual determination, [such matters] must be adduced before and determined by an election contest court as mandated by the Constitution, Article VIII, s 24 and Article IV, s 11 and Chapter 3 of the West Virginia Code or through Quo warranto or a proceeding in the nature thereof.").

Having determined that issuance of a writ of mandamus was improper, the only remaining issue for this Court's determination centers around the request by Commissioner Veltri for an award of his attorney's fees and costs. Commissioner Veltri asserts that notions of justice and fairness dictate that he either be indemnified from public funds, or that Mr. Withers pay for Commissioner Veltri's attorney's fees and costs. However, Commissioner Veltri concedes that he cannot be indemnified from public funds "because [this] election contest does not arise from [his] performance of any official duty of the public office in

13

question." Syl. pt. 5, in part, *State ex rel. Hicks v. Bailey*, 227 W. Va. 448, 711 S.E.2d 270 (2011). We recognize the unique facts of this case, especially of the notion that Commissioner Veltri had to defend redistricting actions that occurred prior to his time on the commission. Thus, Commissioner Veltri urges this Court to recognize an exception to *Hicks*. In the alternative, Commissioner Veltri requests his attorney's fees and costs be paid in addition to the costs mandated by W. Va. Code § 3-7-9 (1963) (Repl. Vol. 2011), which sets forth the recoverable costs in an election contest suit. Noting that this case was not instituted as a true election contest proceeding, Commissioner Veltri also cites to W. Va. Code § 11-8-31a (1985) (Repl. Vol. 2013) as authority for an award of fees from the governing body where a person has successfully defended against an action seeking his or her removal from office.

A review of the appendix record makes it clear that this Court does not have the relevant information to determine what, if any, costs and fees are recoverable. Because the circuit court ruled in favor of Mr. Withers, it did not award Commissioner Veltri his attorney's fees and costs, nor did it address the request in its order. Therefore, this case is remanded to the lower court to determine if the attorney's fees and costs are recoverable under any of the theories espoused by Commissioner Veltri. If it is determined that an award of fees and costs is appropriate, then the lower court shall take evidence to determine the proper amount of that remedy.

14

## IV.

## CONCLUSION

For the aforementioned reasons, the issuance of the writ of mandamus by the lower court is reversed.  Commissioner Veltri shall remain in office for the remainder of his elected term.  Further, this case is remanded to the circuit court for a proper determination as to whether Commissioner Veltri is entitled to an award of attorney's fees and costs.

Reversed and Remanded.